UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL RICCI,

    *Plaintiff*,

v.

DELTA AIR LINES, INC.,

    *Defendant*.

Case No.  4:24-CV-40006-MRG

**GUZMAN, D.J.**

### MEMORANDUM & ORDER ON PLAINTIFF'S MOTION FOR THE APPLICATION OF MASSACHUSETTS LAW [ECF No. 26]

**I.  INTRODUCTION**

    This is a personal injury case.  Plaintiff-passenger Michael Ricci alleges that Defendant-airline Delta Air Lines, Inc. committed negligence and breach of contract when a beverage cart allegedly broke free in-flight and severely injured Plaintiff's knee during the first leg of an employer-funded flight from Connecticut to Tennessee.

    This matter is presently before the Court on Plaintiff's somewhat unusual motion [ECF No. 26] asking this Court to make a choice-of-law determination at an early stage of the case for this key reason: if Massachusetts' three-year statute of limitations for negligence actions[1] applies to Plaintiff's claim(s), the case was timely brought and may proceed.  If, however, Connecticut's two-year statute of limitations

---

[1] Mass. Gen. Laws ch. 260, § 2A provides that, "Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."

1

for negligence actions[2] applies to Plaintiff's claim(s)[3], Plaintiff's case is time-barred.

After ordering limited discovery on choice-of-law [ECF No. 23] and after a hearing [ECF No. 28] on Plaintiff's motion, this Court concludes that Connecticut's two-year statute of limitations applies to *both* Plaintiff's negligence and breach of contract claims and, therefore, both claims are **TIME-BARRED**. Accordingly, the case shall be **DISMISSED**.

## II. BACKGROUND

### a. The Facts[4]

#### i. Plaintiff and His Employer

Plaintiff is a Connecticut resident. [ECF No. 26-1 at 1]. In June 2019, he began working as a Vice President of Project Management at a renewable energy firm, non-party Catalyze Holdings, LLC. [Id. at 2]. Catalyze's corporate headquarters is in Texas, and the company maintained a regional office in Massachusetts at the time of the alleged incident. [Id at 3]. Post-pandemic, Plaintiff worked remotely for Catalyze from his home in Connecticut but was technically assigned to Catalyze's Massachusetts location. [Id.][5] Plaintiff purchased multiple health insurance policies through Catalyze. [Id.]

#### ii. Plaintiff's Employer-Funded Trip to Tennessee

In July 2021, Plaintiff told his supervisor that he needed to renew his renewable energy certification and informed him that there was a qualifying continuing education class being held the next

---

[2] In relevant part, Conn. Gen. Stat. § 52-584 provides that, "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . ."

[3] Delta argues that Plaintiff's breach of contract claim actually sounds in negligence such that the appropriate jurisdiction's statute of limitations for negligence actions should apply to it as well as to the negligence claim. As explained *infra,* the Court agrees.

[4] The Court only recites the facts that are necessary to resolve the choice-of-law issue. The facts included are undisputed unless otherwise noted.

[5] In Plaintiff's words, "[a]t the time of the incident underlying this claim, I worked remotely from home but still out of the Marlborough, MA location." [ECF No. 26-1 at 3].

Defendant has pointed out, and Plaintiff has not disputed, that Catalyze "closed its regional office in Massachusetts at some point after Plaintiff's travel and before suit was filed." [ECF No. 27 at 5].

month in Tennessee. [Id.] Plaintiff's supervisor agreed that it was in Catalyze's best interest for Plaintiff to attend the Tennessee class. [Id.] Catalyze paid for Plaintiff's airline tickets and expenses associated with the trip. [Id.] The round-trip Delta flights called for Plaintiff to travel from Connecticut to Tennessee on August 9, 2021, with a layover in Georgia. The return flight called for Plaintiff to travel from Tennessee to Connecticut on August 13, 2021, with a layover in Michigan. [Id.]

      iii. **Plaintiff's Injury and Eventual Treatment / Surgery**

As planned, Plaintiff boarded his Delta flight from Connecticut to Georgia on August 9, 2021. [Id at 4]. Plaintiff fell asleep in an aisle seat. [Id.] About thirty to forty minutes after takeoff, a beverage cart came free, rolled down the center aisle, and struck his right knee. [Id.] Plaintiff's knee began to swell immediately, and the Delta flight crew provided him with an ice pack. [Id.]

Once the plane landed in Georgia, Plaintiff boarded his connecting flight to Tennessee. [Id.] Once in Tennessee, Plaintiff sought treatment for his knee from an urgent care facility. [Id.] He was then diagnosed with bursitis. [Id.] Upon his eventual return to Connecticut, Plaintiff initially sought treatment from his physician and then an orthopedic specialist at the University of Massachusetts Memorial Hospital in Massachusetts. [Id.] Plaintiff then transferred medical providers and began receiving treatment and physical therapy in Connecticut. [ECF No. 27 at 2 (citations omitted)]. Subsequently, Plaintiff underwent a right knee excision prepatellar bursectomy, also in Connecticut. [Id. (citation omitted)].

    b. **Procedural History**

Plaintiff's Complaint [ECF No. 1-1], which Delta removed to this Court from the Massachusetts Superior Court on diversity grounds, asserts two causes of action: negligence (Count I) and breach of contract (Count II). [ECF No. 1-1 at 5-6]. Delta filed its Answer [ECF No. 15] and the Court set the matter down for a scheduling conference. During that initial conference, the Court determined that the choice-of-law issue was possibly dispositive and that the parties should therefore engage in limited discovery and resolve the matter with motion practice. [ECF No. 23]. At the next court appearance, the Court set a briefing deadline and a hearing date. [ECF No. 24].

In turn, Plaintiff filed the instant motion for the application of Massachusetts law. [ECF No. 26]. In his motion, Plaintiff argued that his negligence claim (Count I) *arises under Massachusetts law*, such

that the Commonwealth's applicable *three-year* statute of limitations for tort claims should apply. Mass. Gen. Laws ch. 260, §2A; [ECF No. 26 at 3]. Delta argued that properly understood, Ricci's negligence claim *arises under Connecticut law*, such that the applicable *two-year* state of limitations should apply. Conn. Gen. Stat. § 52-584; [see ECF No. 27 at 1]. As stated *supra*, Count I was timely brought if the Massachusetts statute of limitations applies but is time-barred if the Connecticut statute of limitations applies.[6]

With respect to Count II, Plaintiff's position appears to be that Delta waived any argument that the breach of contract claim arose under some law other than Massachusetts law by not advancing that argument in its Answer. [See ECF No. 15 at 5–6].[7] However, in its sole responsive pleading to Plaintiff's motion for the application of Massachusetts law, Delta directly briefed this issue and argued that this claim arises under Connecticut law since the claim actually sounds in negligence. [ECF No. 27 at 8]. The Court easily concludes that Delta did not waive its choice-of-law argument relative to Count II. Delta's argument was timely and appropriately raised in their response to Plaintiff's motion, and, in turn, Plaintiff was given the opportunity to respond to it during oral argument. [ECF No. 28].[8] There was no waiver of Delta's argument regarding Count II.

---

[6] This is because the alleged incident occurred on August 9, 2021 [ECF No. 1-1 at 4] and Plaintiff filed this suit in Worcester Superior Court on December 1, 2023. [ECF No. 26 at 5].

[7] In his motion, Plaintiff did not brief the issue of which jurisdiction's law applies to its breach of contract claim, but instead argues that:

> Delta does not assert the same affirmative defense to Plaintiff's contract claim. Instead, Delta contends only that Plaintiff's contract claim is "barred by the applicable contract of carriage." Plaintiff's [breach of] contract claim therefore is not addressed herein, nor was it the subject of this Court's prior hearings concerning choice of law.

[ECF No. 26 at 3 n.1] (internal citation omitted).

[8] In any event, there is no bright line rule requiring the Court to find that choice-of-law arguments waived at this stage of the proceedings. See e.g., Shimizu Corp. v. Dow Roofing Sys., LLC, 2013 U.S. Dist. LEXIS 139260, at *28-29 (D. Mass. Sep. 27, 2013) (explaining that "while a court *may* find waiver for failure to timely raise choice-of-law issues or when opposing parties agree to the source of the substantive law, courts are not *required* to find such waiver" (emphasis in original)).

### c. An Early-Stage Choice-of-Law Determination is Appropriate

The Court recognizes at the outset that early-stage choice-of-law determinations are not common events in civil sessions of federal court. See e.g., Chinn v. GMC, 2007 U.S. Dist. LEXIS 89977, at *4 (D. Mass. Dec. 7, 2007) (ruling at the motion to dismiss stage that, "[w]ithout a stipulation of the parties, the court is unable to make a choice-of-law determination at this early stage of procedural skirmishing"); First Union Nat'l Bank v. Banque Paribas, 135 F. Supp. 2d 443, 453 (S.D.N.Y. 2001) (reasoning at the motion to dismiss stage that, "it is premature to make a definitive choice of law ruling both because it is not yet clear that there is a conflict between New York and English law and because the litigation is at a preliminary stage"). However, the Court's research reveals that there is no rule against making such a determination in these early days of the case. Moreover, the Court has determined that an early-stage choice-of-law determination is particularly appropriate in this case for three reasons.

First, the choice-of-law issue is dispositive, at least with respect to the negligence claim (Count I), meaning that it is highly efficient to resolve the issue now. Compare Lynx Sys. Developers, Inc. v. Zebra Enter. Sols. Corp., 2016 U.S. Dist. LEXIS 37777, at *6 (D. Mass. Mar. 23, 2016) ("[h]ow and in what fashion each state's laws apply is ***not determinative*** at this early stage of whether this case moves forward. If necessary, choice of law analysis will be conducted at a later time." (emphasis added)). Second, the parties have conducted choice-of-law-related discovery and have fully briefed the issue. Compare Chinn, 2007 U.S. Dist. LEXIS 89977 at *4 ("***[w]ithout a more robust record***, the court is not in a position to determine whether New Jersey or Massachusetts has a more significant relationship to the case than does Connecticut." (emphasis added)). Third, the Court held a hearing on Plaintiff's motion; meaning that the parties have been fully heard. For all three of these reasons, the Court finds that this is the unusual case where an early-stage choice-of-law determination is warranted and appropriate. See e.g., Hickinbottom v. Atrium Med. Corp., 2019 U.S. Dist. LEXIS 146157 *10-11 (D. N.H. Aug. 29, 2019) (deciding at the motion to dismiss stage that plaintiff "has not shown that the choice-of-law determination is premature, and the court [therefore] employs the analysis.").

### d. Was There a Forum Selection Clause?

Although neither party briefed this issue, the Court inquired at the motion hearing as to whether

any applicable contract of carriage might have contained a forum selection or other related provision that might bear on the choice-of-law issue.[9] Neither party was certain as to the answer to the Court's question and neither party submitted any supplemental pleadings on the issue. Accordingly, the Court presumes for purposes of this opinion that the parties did not have a contractual agreement mandating which jurisdiction's statute of limitations should apply to Plaintiff's claims.

## III. LEGAL STANDARDS

### a. Choice-of-Law Legal Framework

When this Court sits in diversity, it must apply the choice of law rules from its forum state: the Commonwealth of Massachusetts. Holbrook v. Bos. Sci. Corp., 487 F. Supp. 3d 100, 105 (D. Mass. 2020) (citation omitted). The precise conflicts-of-law issue before the Court today is one involving *conflicting statutes of limitations*. Massachusetts courts apply the so-called "functional approach" when dealing with this specific choice-of-law issue. New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 419 Mass. 658, 660-63, 647 N.E.2d 42 (1995). In New England Telephone, the Supreme Judicial Court adopted the "functional approach" rule as set forth in the Restatement (Second) of Conflict of Laws (hereafter, "Restatement"), § 142 (2nd 1988), which provides, in part, that:

> (2) The forum will apply its own statute of limitations permitting the claim unless:
>
> (a) maintenance of the claim would serve no substantial interest of the forum; and
>
> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

419 Mass. at 659 n.1 (citing to § 142(2)).

---

[9] The Court recognizes that even if Delta's contract of carriage did contain a forum selection clause, it might only have provided which jurisdiction's substantive law controls and might not have provided for which jurisdiction's statute of limitations should apply. See e.g., Davidovich v. Shimha LLC, 2023 N.Y. Misc. LEXIS 9455, *7-8 (N.Y. Sup. Ct. Oct. 10, 2023) (unpublished) (explaining that "forum selection clauses only deal with substantive law, not procedural law and the forum state generally determines whether such law is procedural or substantive") (citation omitted).

In conducting this analysis, this Court must recognize that the two above-listed criteria are "necessarily related and should be evaluated 'with some sensitivity' to one another." Nierman v. Hyatt Corp., 441 Mass. 693, 696 (2004) (citations omitted). Relatedly, the focus is to be "on the timeliness of the action, rather than the underlying claim." Holbrook, 487 F. Supp. 3d at 105. Indeed, the SJC has also reasoned that a Massachusetts court may apply the statute of limitations of another state if that state has "the dominant interest in having its own limitations statute enforced." See Nierman, 441 Mass. at 696-98.

The New England Telephone Court called attention to several Comments to § 142 that are particularly relevant here. 419 Mass. at 661. First, the court explained that when conducting the "more significant relationship" analysis, the focus "should be on which State has the more significant relationship to the occurrence and to the parties with respect to the issue of limitations," citing to Comment "g" of the Restatement, which provides in part that, "the forum *should not* entertain a claim when doing so would not advance any local interest and would frustrate the policy of a state with a closer connection with the case and ***whose statute of limitations would bar the claim***." Id. (citing § 142 comment g) (emphasis added). The SJC also called attention to the "emerging trend" -- articulated in Comment "e" -- to bar a claim if it is barred by "the state which, ***with respect to the issue of limitations*** is the state of most significant relationship to the occurrence and to the parties under the principles stated in § 6 [of the Restatement]" Id. (citing § 142 comment e) (emphasis in original). The § 6 factors[10] help to inform the

---

[10] These include:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,

Court's analysis of which jurisdiction has the more significant relationship to the parties and the occurrence. Id. at 664, n. 6 (explaining that, "[i]t may be, as a practical matter, that the principles of § 6 have no important role to play in § 142(2) until a court Comes to consider which State has the more (or most) significant relationship to the parties and the occurrence.").

## IV. APPLICATION -- TIMELINESS OF THE COMPLAINT

### a. The Negligence Claim (Count I)

#### i. More Significant Relationship Test

The Court begins by considering whether Plaintiff's claim would be "barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." § 142(2); Nierman, 441 Mass. at 697 (beginning its choice-of-law, conflicting statute-of-limitations analysis with the "more significant relationship" prong). After careful review, the Court concludes that the more significant relationship test points strongly towards the use of the Connecticut limitations statute.

Rather than affirmatively arguing which jurisdiction has the "more significant relationship" to the parties and the occurrence, Plaintiff argued *in negative terms* that "Connecticut does not have a more significant relationship with the parties or the occurrence." [See ECF No. 26 at 7–9]. Specifically, Plaintiff averred that "Connecticut's only relationship **with the parties** is that the Plaintiff resides in Connecticut and flew out of Connecticut" and, with respect to the *occurrence*, argued that "we are uncertain where the incident took place" [Id. at 8–9 (emphasis added)].

---

(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement, § 6(2).

In support of his argument that Connecticut does not have the more significant relationship with the parties and the occurrence in this case, Plaintiff's principally cited to Nierman, cited *supra*. 441 Mass. 693; [ECF No. 26 at 8–9]. The Court agrees that Nierman is highly instructive but concludes that its teachings actually cut strongly in favor of a finding that Connecticut has the more significant relationship to the parties and the occurrence in this case.

The plaintiffs in Nierman were a married couple from Massachusetts. 441 Mass. at 693-94. Mrs. Nierman was injured at a hotel in Texas when a hotel employee accelerated a transport cart in which she was seated. 441 Mass. at 693-94. The corporation that owned the hotel was incorporated in Delaware and had its principal place of business in Illinois. Id. All the events constituting the alleged negligence occurred in Texas. Id. Plaintiffs had made the hotel reservations through a Massachusetts travel agent. Id. Plaintiffs' claim would have been barred under the Texas two-year statute of limitations for negligence actions, but timely under Massachusetts' three-year statute. Id.

Rejecting the argument that the Massachusetts statute should apply, the SJC found that Texas had the "dominant interest" in having its statute of limitations applied, id. at 698, and explained in part that,

> Massachusetts has a general interest in having its residents compensated for personal injuries suffered in another State. It cannot be said, however, that its interest in the timeliness of such an action is more compelling than that of Texas. The Texas Legislature has prescribed a two-year period within which the [plaintiff] could have commenced this action. This time frame reflects its judgment as to the proper balance between the need of its citizens to redress injuries and their right to be protected from protracted exposure to liability.

Id. at 697–98.

Here, Connecticut has the "dominant interest" in having its statute of limitations applied. See id. Four undisputed facts, when viewed through the prism of Nierman and other instructive pieces of case law, point strongly towards this conclusion.

9

- **Undisputed Fact #1**

**Plaintiff is -- and was at the time of the alleged incident (i.e., August of 2021) --** *a Connecticut resident and citizen*. In its considered judgment, the Connecticut legislature has decided that a two-year statute of limitations for negligence claims strikes the proper balance between its citizens' rights to seek remedies for their injuries and defendants' right to be protected from unreasonably prolonged exposure to liability. Id. at 697–98; Conn. Gen. Stat. § 52-584. Indeed, the Connecticut Appellate Court has explained,

> There are two principal reasons generally given for the enactment of a statute of repose: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose.

Beebe v. Town of E. Haddam, 48 Conn. App. 60, 67 (1998) (internal quotation marks omitted).

Although a Plaintiff's state of residency is not a dispositive factor in this analysis, see e.g., Gordon v. Starwood Hotels & Resorts Worldwide, Inc., 238 F. Supp. 3d 229, 234 (D. Mass. 2017), it is a fact that the Court may and does consider relevant here. Plaintiff did not need to cross state lines to follow this lawsuit. Indeed, Plaintiff has not suggested that the *substantive law* of negligence is materially different in Massachusetts such that there was a strategic reason for Plaintiff to file suit in the Commonwealth *but for* the timeliness issue. Thus, the undisputed fact that Plaintiff is a resident and citizen of Connecticut supports a finding that Connecticut has the more significant relationship to the parties and the occurrences in this case.

- **Undisputed Fact #2**

**At the time of the alleged incident, Plaintiff** *worked remotely* **for Catalyze from his home in Connecticut.** A central theme of Plaintiff's argument in favor of the application of Massachusetts law is

that the Delta flight on which he was allegedly injured was part of an *employer-funded trip* and that his employer maintained a field office to which he was assigned in Massachusetts. [ECF No. 26 at 2]. However, Plaintiff overlooks the significance of the fact that since the pandemic, he has been a remote Catalyze employee based in Connecticut. [ECF No. 26-1 at 3]. The Court gives very little weight to the allegation that he was assigned to a Massachusetts field office, [see id. at 3], and is instead much more interested in *where he actually did his work for Catalyze*, which was in Connecticut. Cf. Wallens v. Milliman Fin. Risk Mgmt. LLC, 509 F. Supp. 3d 1204, 1216 (C.D. Cal. 2020) (rejecting at the motion to dismiss stage a defendant-supervisor's argument that a California federal district court did not have personal jurisdiction over her where she had allegedly harassed a California-based remote employee during virtual meetings).

Whether the Delta flight tickets were purchased from the Catalyze Massachusetts field office is irrelevant to the analysis under Nierman. See 441 Mass. 693, 697 ("The fact that [plaintiffs'] travel reservations were booked through Massachusetts travel agents ***carries no weight in our analysis***, because that contact has no apparent bearing on any issue in the case, let alone the limitations issue") (emphasis added)). Moreover, as noted *supra*, Catalyze closed its Massachusetts field office *before Plaintiff filed suit*, [ECF No. 27 at 5], so whatever tenuous connection Plaintiff had with Massachusetts via Catalyze is insignificant to the present legal analysis. Accordingly, Plaintiff's status as a remote worker for Catalyze supports a finding that Connecticut has the more significant relationship to the parties and the occurrence in this case.

- **Undisputed Fact #3**

**Plaintiff sustained his alleged injury on a Delta flight that departed *from a Connecticut airport*.** Likely because it was a convenient option near his home (and home office), Plaintiff's trip commenced at Bradley International Airport in Hartford, Connecticut. [ECF No. 26-1 at 3]. Although

Delta is a Delaware corporation with a principal place of business in Georgia, [ECF No. 1-1 at 3], it is undisputed that just prior to Plaintiff's alleged injury, Plaintiff, the Delta flight crew, the aircraft (and thus the equipment on board) were all last on *terra firma* in Connecticut.

Plaintiff suggested that the jurisdiction over which the plane was flying at the time of the alleged incident -- perhaps New York -- should have some bearing on the analysis. [ECF No. 26 at 8, n. 3 ("It should be noted that the average Delta flight pattern from Connecticut to Georgia flies over New York approximately 30 minutes into the flight. New York also has a three-year statute of limitations for personal injury claims. N.Y. C.P.L.R Law § 214.")  The Court will not credit conjecture about where the aircraft *may* have been while Plaintiff was asleep.  Moreover, the Court finds that a separate section of the Restatement, namely, § 145 (2nd 1988) (hereafter, "§ 145"), contains a Comment which, while not directly applicable to the statute of limitations conflict issue,[11] provides some instructive guidance.

Specifically, Comment e to § 145(2) provides that:

> When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered. So when the plaintiff is injured while traveling on a train or while riding as a guest passenger in an automobile, the state where his relationship to the railroad or to the driver of the automobile is centered may be the state of the applicable law… ***A possible example is where the plaintiff in state X purchases a train ticket from the defendant to travel from one city in X to another city in X, but is injured while the train is passing for a short distance through state Y. Here X local law, rather than the local law of Y, may be held to govern the rights and liabilities of the parties.***

§ 145, Comment e (emphasis added).

This train ride example is particularly instructive for two reasons.  First, the Restatement calls for the application of the law from the *state where the train originated*.  Second and more

---

[11] As a general matter, § 145 provides guidance on how to determine which jurisdiction's *substantive law* applies.  See McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 589 (2017) (explaining that "this Court [has] formally adopted the Second Restatement's most-significant-relationship test in sections 146, 145, and 6 for deciding the choice of **substantive** law in tort cases involving more than one state" (emphasis in original)).

12

fundamentally, the Restatement does not call for the application of the law from the state where the injury occurs when the train *was only passing through that state for a short distance*. Thus, there is no reasonable argument that the Court should apply New York (or some other state whose airspace the Delta flight might have been flying through) when the injury occurred. Accordingly, the fact that all the parties and equipment involved in the alleged incident had departed from a Connecticut airport supports a finding that Connecticut has the more significant relationship to the parties and the occurrence in this case.

- **Undisputed Fact #4**

*Plaintiff received significant treatment, physical therapy, and surgery related to his alleged injury in Connecticut.* The fourth and final undisputed fact that supports a finding that Connecticut has the more significant relationship to the parties and the occurrence in this case is that Plaintiff received such significant medical treatment for his alleged injury in his home state of Connecticut. See e.g., Straub v. Bos. Sci. Corp. (In re Bos. Sci. Corp.), MDL No. 2326, 2015 U.S. Dist. LEXIS 31770, at *7 (S.D. W. Va. Mar. 16, 2015) ("Here, the implantation surgery that allegedly resulted in [plaintiff's] injuries took place in Arizona. [Plaintiff] is an Arizona resident, *and she received medical care for her alleged injuries in Arizona*. No other state has a more significant relationship. Thus, I apply Arizona's substantive law—including Arizona's statutes of limitations—to this case") (emphasis added)). This factor is particularly important here since it is conceivable that doctors and other medical staff that treated Plaintiff could be called to testify, in addition to his medical records being at issue. It too weighs in favor of finding that Connecticut has the more significant relationship to the parties and the occurrence in this case.

For the reasons stated *supra*, the Court concludes that Connecticut has the most significant relationship to the parties and the occurrence relative to the negligence claim. See Nierman, 441 Mass. at 698.

13

### i. **Substantial Interest Test**

The next question for the Court under § 142(2) is whether Plaintiff's negligence claim "would advance a substantial forum interest" of Massachusetts and "would not seriously impinge upon the interests of other states." Id. at 696. Hinging his argument on the tenuous hook between Massachusetts and his employment with Massachusetts (discussed *supra*), Plaintiff argued that his claim would advance a substantial forum interest of Massachusetts since (a) Plaintiff has "just expectations of compensation for an injury that occurred while he was on a work-related trip – for both workers' compensation and third-party purposes" and because (b) health insurers that provided the majority of Plaintiff's care "enjoy certain statutory protections for repayment of their care." [ECF No. 26 at 5–6]. Both arguments are unavailing.

Defendant has pointed out and Plaintiff has not disputed that he *did not* file a workers' compensation claim in Massachusetts (at least not before filing this suit). [ECF No. 27 at 4–5]. Moreover, *even if he had*, that would not have been enough, standing on its own, to show that Massachusetts has a substantial interest that overcomes Connecticut's more significant interest in the claim. See e.g., Mukarker v. City of Phila., 238 F. Supp. 3d 174, 178 (D. Mass. 2017) (observing that, in two unpublished opinions, "the Massachusetts Appeals Court held that the financial implications of workers' compensation and other Massachusetts laws did not give the forum state a substantial interest to overcome a more significant relationship to the claim") (citations omitted)). Just as the SJC stated in Nierman, Massachusetts "has a ***general interest*** **in *having its residents***[12] compensated for personal injuries suffered in another State" but it "cannot be said, however, that its interest in the timeliness of such an action is more compelling" than that of Connecticut. See Nierman, 441 Mass. at 697 (emphasis added). Accordingly, the Court concludes that Connecticut "has the dominant interest in having its own limitations statute enforced" on the negligence claim. See id. at 698.

---

[12] Since Plaintiff is not a Massachusetts resident, his general reliance on Nierman is even more tenuous.

In sum, after carefully applying the § 142(2) test, the Court finds that Connecticut's two-year statute of limitations for negligence claims, Conn. Gen. Stat. § 52-584, applies to Count I and the claim is therefore **TIME-BARRED**.

### b. The Breach of Contact Claim (Count II)

#### i. Legal Standard – Substance Over Form

The threshold question on this claim is whether it actually sounds in negligence. See e.g., Lee v. Ohio Educ. Ass'n, 951 F.3d 386, 391 (6th Cir. 2020) (explaining that "[t]he *label* which a plaintiff applies to [her] pleading *does not determine* the nature of the cause of action") (emphasis added and citations omitted); Brooks v. District of Columbia, 375 F. Supp. 3d 41, 45 (D.D.C. 2019) (explaining that, "the Court **looks through the form of the complaint** to the substance of the allegations to determine the true nature of Plaintiffs' claims") (emphasis added and citation omitted). If it does, in fact, sound in negligence, then the Court must apply the Connecticut two-year statute of limitations *for negligence actions* to this claim for the same reasons stated *supra*. As noted, Defendant contends that Count II does sound in negligence, [ECF No. 27 at 8], while Plaintiff took no position on that precise question, suggesting instead that Delta had somehow waived argument on the issue. [ECF No. 26 at 3, n. 1].

#### ii. Application

After careful review, the Court finds that Plaintiff's breach of contract claim does indeed sound in negligence. [See ECF No. 1-1 at 6]. Although Count II is captioned as "Breach of Contract," Plaintiff neither cited nor attached any purported contract to the Complaint. [See ECF No. 1-1]. Although Plaintiff was prompted by the Complaint's Civil Cover Sheet to provide a "[d]etailed [d]escription" of any contract claims, this section was left blank. [ECF No. 1-3 at 1]. The closest thing to a purported contract that Plaintiff presented to the Court was a copy of some "Terms and Conditions" contained in the Delta flight receipt that Plaintiff attached to his pleading in support of the instant motion. [ECF No. 26-1 at 21-22].

However, it is not for the Court to read these terms and conditions and determine if they plausibly support a breach of contract claim. See Delgado Echevarria v. AstraZeneca Pharm. LP, 856 F.3d 119, 139 (1st Cir. 2017) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.")

Looking through the form of the Complaint to its substance, see Brooks, 375 F. Supp. 3d at 45, provides further evidence that Count II is part and parcel of Plaintiff's negligence claim. Notably, Plaintiff alleges that when he purchased his Delta airline ticket, the "agreement between the parties" "*implied* that the Plaintiff would arrive safely to his destination while on board the aircraft." [ECF No. 1-1 at 6] (emphasis added). The Plaintiff further alleges that Delta "through *its own negligence*, failed to transport the Plaintiff to his destination free from injury." [Id] (emphasis added). By its own terms, then, this claim, in substance, sounds in tort law, specifically negligence.

Indeed, the Connecticut Supreme Court has explicitly stated that *simply naming* a cause of action a breach of contract does not magically produce a breach of contract claim. See Gazo v. City of Stamford, 255 Conn. 245, 262 (2001) (rejecting the argument that a breach of contract claim lay against a defendant and explaining that "[p]ut another way, the liability of [the defendant in question] to the plaintiff, if any, is based on principles of tort law, and the plaintiff may not convert that liability into one sounding in contract *merely by talismanically invoking contract language in his complaint*") (emphasis added)). Here, Plaintiff did not direct the Court to any particular contract-at-issue. Just for example, to prove a breach of contract under Massachusetts law, Plaintiff would have to show that "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." See Gibson Found., Inc. v. Norris, 88 F.4th 1, 11–12 (1st Cir. 2023).

After careful scrutiny, the Court finds that Count II sounds in negligence. Therefore, the Court applies Connecticut's two-year statute of limitations to Count II for the same reasons stated *supra*. See

Pinette v. McLaughlin, 96 Conn. App. 769, 774 n.3 (2006) (observing first, "[o]f course, a contract to undertake certain obligations may give rise to a duty that forms the basis for a claim of negligence. That is to be distinguished, however, from a cause of action based on breach of contract" and then finding that a claim alleged as breach of contract actually sounded in negligence and was thus subject to the statute of limitations for negligence actions.)  Accordingly, the Court applies Connecticut's two-year statute of limitations for negligence claims, Conn. Gen. Stat. § 52-584, to Count II and the claim is therefore **TIME-BARRED**.

V.   **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for the application of Massachusetts law [ECF No. 26] is **DENIED.**  As noted *supra*, the Court applies the Connecticut two-year statute of limitations for negligence actions to both Counts I and II and finds that this case is therefore fully time-barred. While Defendant has not filed a motion to dismiss, "*[s]ua sponte* dismissal can be appropriate where the complaint 'contain[s] incurable defects that are evident from the face of the complaint.'" González-Ortíz v. P.R. Aqueduct & Sewer Auth. (PRASA), No. 23-1509 (RAM), 2024 U.S. Dist. LEXIS 197256, at *7 (D.P.R. Oct. 28, 2024) (quoting Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 7 (1st Cir. 2007)). The First Circuit has held that a district court acts "within its authority to dismiss *sua sponte* Plaintiff's [] claims as time-barred" when "the statute of limitations defects were evident on the face of the Complaint, and any amendment to the factual basis would not alter that determination." González-Ortíz, No. 23-1509 (RAM), 2024 U.S. Dist. LEXIS 197256, at *7-8. Such is the case here, and, accordingly, this case is **DISMISSED**.

**SO ORDERED.**
Dated: March 10, 2025

/s/ Margaret R. Guzman
MARGARET R. GUZMAN
United States District Judge